Howard Marc Spector
TBA #00785023
SPECTOR & COX, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
EMAIL: hspector@spectorcox.com

**COUNSEL FOR THE DEBTOR**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** § § § | | |
| **Builders Direct Sales Group, LLC** § § | | Case No. 23-30745-11 |
| **Debtor.** § § | | **(Chapter 11)** |

> Original Plan of Reorganization
> Filed by the Debtor
> Dated: July 14, 2023
> Carrollton, Texas

The Debtor, as Debtor-in-possession proposes this Original Plan of Reorganization under Chapter 11, Subchapter V of the Bankruptcy Code.

### ARTICLE 1: DEFINITIONS, INTERPRETATION AND BACKGROUND

**1.1** *Definitions*

The capitalized terms used herein shall have the respective meanings set forth below:

(a) "**Ad Valorem Taxing Authorities**" shall mean any governmental entity entitled by law to assess taxes on property based upon the value of such property and to take a statutory Lien senior to Liens filed of record to secure the payment of such taxes and interest accruing thereon.

(b) "**Administrative Claim**" shall mean a Claim entitled to priority under Sections 503[b] and 507[a][2] of the Bankruptcy Code in this Case of the Debtor.

(c) "**Allowed**" when used with respect to any Claim, except for a Claim that is an Administrative Claim, shall mean [1] such Claim to the extent it is not a Contested Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or [3] a Contested Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline, unless

such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or [B] as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

(d) "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

(e) "**Bankruptcy Court**" shall mean the Bankruptcy Court unit of the United States District Court for the Northern District of Texas, or such other court having jurisdiction over the Case.

(f) "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to Section 2075 of title 28 of the United States Code.

(g) "**Builders**" shall mean Builders Direct Sales Group, LLC.

(h) "**Business Day**" shall mean any day on which commercial banks are open for business in Carrollton, Texas.

(i) "**Cash**" shall mean legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America and which present an insignificant risk of changes in value.

(j) "**Case**" shall mean the Chapter 11 Case of the Debtor commenced under the Bankruptcy Code.

(k) "**Confirmation Date**" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(l) "**Confirmation Hearing**" shall mean the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

(m) "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan.

(n) "**Contested**," when used with respect to a Claim, shall mean a Claim against the Debtor [1] that is listed in the Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; and [3] that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been filed. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Contested Claims.

(o) "**Contested Claim Reserve**" shall mean the reserve accounts established pursuant to this Plan for funding Contested Claims if such Claims are ultimately allowed by Final Order and which are to be held pending resolution of Contested Claims by the entry of a Final Order allowing or disallowing such Contested Claim[s].

(p) "**Contracts**" shall mean all executory contracts and unexpired leases as such terms are used within Bankruptcy Code Section 365 to which the Debtor was a party as of the Petition Date, as the case may be.

(q) "**Debtor**" shall mean Builders Direct Sales Group, LLC.

(r) "**Disallowed**," when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

(s) "**Distribution Fund**" shall mean an amount equal to all of the projected disposable income of the Debtor to be received in the Term, beginning on the date that the first payment is due under the Plan and through the end of the Term, plus any Net Proceeds of Receivable Recoveries plus any Net Proceeds of Motili Recoveries. The Debtor's analysis of projected disposable income is set forth in Exhibit 1.

(t) "**Effective Date**" shall mean a Business Day which is fifteen [15] days after the Confirmation Date unless the Confirmation Order is stayed, in which case the Effective Date shall be the first Business Day after which the Confirmation Order becomes a Final Order.

(u) "**Estimated Amount**" means the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim [or class of Claims] against a Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] distribution under § 502[c], Bankruptcy Code; or [b] determining the feasibility of this Plan pursuant to § 1129[a][11], Bankruptcy Code for purposes of its Confirmation.

(v) "**Estimation Order**" means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against the Debtor for any of the purposes as provided in this Plan.

(w) "**Fee Application**" shall mean an application of a Professional Person under Section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Case.

(x) "**Fee Claim**" shall mean a Claim under Section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Case.

(y) "**Final Order**" shall mean an order which has been entered and [1] as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or [2] in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

(z) "**General Unsecured Claim**" shall mean any Unsecured Claim against the Debtor that is not an Administrative Claim or a Priority Claim.

(aa) "**Interest**" shall mean any right in the Debtor represented by an "equity security", as defined in section 101[16] of the Bankruptcy Code, or any right to acquire such an "equity security".

(bb) "**IRS**" shall mean the Internal Revenue Service, a bureau of the Department of the Treasury of the United States.

  (cc) "**Motili Recoveries**" shall mean any Net Proceeds of claims and causes of action of the Debtor against Motili or its Affiliates received by the Debtor during the Term.

  (dd) "**Net Proceeds**" shall mean any Cash recovery net of all legal fees (and/or contingency legal fees), costs and expenses of suit. The Net Proceeds for any non-cash recovery is the amount of cash remaining after the final judgment and recovery of non-cash asset is liquidated and the cash proceeds are distributed net of all liquidation costs, legal fees, costs and expenses of suit.

  (ee) "**Objection Deadline**" shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Section 9.1 of the Plan.

  (ff) "**Petition Date**" shall mean April 15, 2023.

  (gg) "**Plan**" or "**Plan of Reorganization**" shall mean this Original Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

  (hh) "**Priority Claim**" shall mean an Unsecured Claim entitled to priority under Section 507.

  (ii) "**Priority Non-Tax Claim**" shall mean an Unsecured Claim entitled to priority under Section 507 of the Bankruptcy Code, save and except (i) those held by the IRS and (ii) Administrative Claims.

  (jj) "**Pro Rata Share**" shall mean "the proportion that the amount of an Allowed Claim in a particular class of Claims bears to the aggregate amount of all Claims in such class of Claims, including Contested Claims, but not including Disallowed Claims.

  (kk) "**Professional Person**" shall mean a person retained or to be compensated pursuant to Section 327, 328, 330, 503[b] or 1103 of the Bankruptcy Code.

  (ll) "**Receivable Recoveries**" shall mean any Net Proceeds of accounts receivables which existed on the Petition Date and which are received by the Debtor during the Term.

  (mm) "**Reorganized Debtor**" shall mean the Debtor, as reorganized, on and after the Effective Date.

  (nn) "**Schedules**" shall mean the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

  (oo) "**Term**" shall be the term of years for distributions under this Plan as fixed by the Bankruptcy Court pursuant to Section 1191(b) of the Bankruptcy Code.

  (pp) "**Unsecured Claim**" shall mean a Claim which is not secured by valid, perfected and enforceable Lien that is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law.

Words and terms defined in Section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.2** *Interpretation*

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. All exhibits and schedules attached to the Plan are incorporated herein by such attachment.

**1.3** *Reorganized Debtor*

The Plan shall be liberally construed for the benefit of the Debtor and Reorganized Debtor regarding the interchangeableness of the term "*Debtor*" with the term "*Reorganized Debtor"* and other instances of the use "*Reorganized.*"

**1.4** *Background Information*

The Debtor creates individualized programs for builders that are proven to control cost, decrease issues, and increase consumer satisfaction. The Debtor provides HVAC systems that meet industry standards and a program that exceeds them.

### ARTICLE 2: CLASSIFICATION OF CLAIMS

**2.1** *Claims Classified*

For purposes of organization and all confirmation matters, except as otherwise provided herein, all Claims [except for Administrative Claims] shall be classified as set forth in this Article 2 of the Plan.

**2.2** *Administrative Claims*

Administrative Claims against the Debtor shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately on the terms set forth in Article 5 of the Plan.

**2.3** *Claims*

The Plan classifies the Claims against the Debtor as follows:

| | | | |
|---|---|---|---|
| [a] | Class 1: | | Any Allowed Secured Claims of Motili, Inc. |
| [b] | Class 2: | | Any Allowed Secured Claims of Independent Bank. |
| [c] | Class 3: | | Any Allowed General Unsecured Claims. |
| [d] | Class 4: | | Interests in the Debtor. |

### ARTICLE 3: IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

**3.1** *Impaired Classes*

Classes 1, 2 and 3 are impaired.

### 3.2 *Impairment Controversies*

If a controversy arises as to whether any Claim or any class of Claims is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

### ARTICLE 4 : PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

### 4.1 *Treatment of Claims and Interests*

[a]    *Class 1 – Any Secured Claims of Motili, Inc.* Motili's Secured Claim shall be disallowed on account of the perfection of its security interests within the preference period and Motili shall receive no distribution on account of such claim. Any claim of Motili shall be treated as a General Unsecured Claim.

[b]    *Class 2 – Any Allowed Secured Claims of Independent Bank.* Independent Bank shall receive payment on account of its Allowed Class 2 Claim, Independent Bank in monthly installment payments necessary to amortize the Class 2 Allowed Secured Claim [which includes amounts that accrued pre-petition] over a period beginning on the Effective Date and ending three [3] years after the Effective Date, with interest from and after the Effective Date at the rate applicable to of 5% per annum.

[c]    *Class 3 – Any Allowed General Unsecured Claims.* In full and final satisfaction of its Allowed Class 3 Claim, each holder of an Allowed General Unsecured Claim against the Debtor shall be paid its Pro Rata Share of the Distribution Fund in quarterly installments beginning on the first day of the 3rd month following the Effective Date and ending on the 1st day of the month 33 months thereafter (for a total of 12 quarterly payments).

[d]    *Class 4 – Interests in the Debtor.* Holders of Interests in the Debtor shall retain such Interests.

### ARTICLE 5 : PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 5.1 *Treatment of Administrative Claims*

Each holder of an Allowed Administrative Claim against the Debtor shall receive on the Effective Date one of the following [i] the amount of such holder's Allowed Claim in one Cash payment; or [ii] such other treatment as may be agreed upon in writing by the Debtor and such holder. Provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business may be paid in the ordinary course of business.

### 5.2 *Procedure for Filing Administrative Claims*

The holder of an Administrative Claim [including Fee Claims] incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, notice of such Administrative Claim and, if applicable, a Fee Application within 60 days after the Effective Date. Failure to file and serve these documents timely and properly shall result in the Administrative Claim being forever barred and discharged.

### 5.3    *Treatment of Other Priority Claims*

Each holder of a Priority Claim against the Debtor, other than an Administrative Claim or a Priority Non-Tax Claim, shall receive a Cash payment in the amount of its Allowed Claim on the Effective Date.

## ARTICLE 6 : ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    *Classes Entitled to Vote*

Class 1 is deemed to reject the Plan.  Class 2 and Class 3 are entitled to vote to accept or reject the Plan.  Class 4 is deemed to accept the Plan since holders of Interests retain their Interests.

## ARTICLE 7 : MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1    *Vesting of Assets*

On the Effective Date, all real and personal property of the estate of the Debtor, including but not limited to all causes of action of the Debtor, and any avoidance actions of the Debtor, under applicable non bankruptcy law or the Bankruptcy Code, shall vest in the Debtor as Reorganized Debtor and shall not be assertable by any party other than the Reorganized Debtor on behalf of its creditors subject to those Claims, Liens, and encumbrances as Allowed and restructured in this Plan and as specified herein.  Provided however, that upon any subsequent conversion of either of the Case under Chapter 7 of the Reorganized Debtor, all assets vesting in Reorganized Debtor, other than Exempt Property, shall pass to the Chapter 7 trustee as property of the Chapter 7 estate subject to those Claims, Liens, and encumbrances as Allowed and restructured in this Plan and as specified herein.

### 7.2    *Assumption of Liabilities*

The liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtor.

### 7.3    *Contested Claims*

[a]    Establishment of Contested Claims Reserve.  Notwithstanding any other provision of this Plan, no assets or property shall be distributed under this Plan on account of any Contested Claim.  For all Contested Claims, the Reorganized Debtor shall establish and hold, in trust, distributions to be made to the holders of Contested Claims [each such reserve being herein called a "Contested Claims Reserve"], and shall place in each Contested Claims Reserve the assets and property to be distributed on account of such Contested Claims pursuant to this Plan, pending Allowance or Disallowance of such Claim.  Pending entry of a Final Order concerning a Contested Claim, the Reorganized Debtor shall pay into the Contested Claims Reserve all payments provided for under this Plan pursuant to any Allowed Claim which would have been required to be delivered to the claimant absent a Contested Claim.  Cash held in any Contested Claims Reserve shall be held in a segregated interest-bearing trust account.  To the extent practicable, the Reorganized Debtor may invest the Cash in any Contested Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.

[b]     Determination of Contested Claims Reserve.  The Bankruptcy Court may, at any time, determine for each Contested Claim, the amount of assets and property sufficient to fund each Contested Claims Reserve established with respect to any such class.  The Bankruptcy Court may estimate and determine by an Estimation Order the Estimated Amount of Claims in each class for which a Contested Claims Reserve has been established.  Any claimant holding a Contested Claim so estimated will have recourse only to undistributed assets and property in the Contested Claims Reserve for the class in which such Contested Claim has been placed and not to the Reorganized Debtor or any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[c]     Return of Assets.  Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Contested Claims Reserve for any class of Claims remaining after the resolution of all disputes relating thereto shall be returned to the appropriate Reorganized Debtor for distribution in accordance with this Plan.

[d]     Withholding of Taxes.  The Reorganized Debtor shall withhold from any assets and property distributed under this Plan any assets and or property which must be withheld for federal, state and local taxes payable by the Entity entitled to such property to the extent required by applicable law.

### 7.4    *Estimated Claims*

Except as otherwise provided herein, the Court may estimate for purposes of allowance pursuant to § 502[c], Bankruptcy Code, [i] any Contested Claim or unliquidated Claim, or [ii] any portion or part of a Claim that is, itself, unliquidated.  Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

### 7.5    *Claims on File; No Allowance of Untimely Claims.*

The Debtor is relying on the formal proofs of Claim on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan.   No informal proof of claim shall be deemed to have been filed in this Case.

### 7.6.   *Corporate Governance*.

The Reorganized Debtor shall continued to be managed by James Cook.

## ARTICLE 8 : PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1    *Distributions*

Any distributions and deliveries to be made under the Plan shall be made on the Effective Date, as otherwise provided for herein, or as the Bankruptcy Court may order.

**8.2** *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address]. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. All unclaimed property shall revert to the Reorganized Debtor or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

**8.3** *Time Bar to Cash Payments*

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check. After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE 9:
### PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND CONTESTED CLAIMS UNDER THE PLAN

**9.1** *Objection Deadline*

As soon as practicable, but in no event later than sixty [60] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. Notwithstanding the foregoing sentence, as to any Claim which is filed after the Effective Date, an objection to such Claim shall be filed on or before sixty [60] days after the date on which such Claim is filed.

**9.2** *Prosecution of Objections*

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all claim objections may be made by the Reorganized Debtor.

**9.3** *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim. Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

## ARTICLE 10:
### PROVISIONS GOVERNING EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER THE PLAN

### 10.1  *Assumption of Contracts.*

The Plan constitutes a motion by the Debtor to assume, as of the Effective Date, all Contracts. As to such Contracts, [a] no cure pursuant to Bankruptcy Code section 365[b][1][A] is necessary; [b] no Bankruptcy Code section 365[b][1][B] compensation is owing or shall be owing upon the assumption; and [c] confirmation of this Plan shall be deemed [i] adequate assurance of prompt cure of any default, [ii] adequate assurance of future performance under such Contracts.

### 10.2  *Bar to Rejection Damages.*

If the rejection of a Contract by the Debtor results in damages to the other party or parties to such Contract, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor or its respective property or its agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before sixty [60] days following the Effective Date.

### 10.3  *Insurance Policies.*

Notwithstanding anything in the Plan or Sections 10.1 and 10.2 of the Plan, all insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation Date.  All payments upon such policies are current; no cure payments are necessary.

## ARTICLE 11 : RETENTION OF JURISDICTION

### 11.1  *Scope of Jurisdiction*

Pursuant to Sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Case, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Case and the Plan.  Without limitation, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

[a]   to modify this Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;
[b]   to enforce and interpret the terms and conditions of this Plan;
[c]   to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Reorganized Debtor;
[d]   to enter an order concluding and terminating the Case;
[e]   to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of this Plan, including the adjustment of the date[s] of performance under this Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan may be substantially realized thereby;

[f] to approve all Fee Claims;

[g] to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to this Plan or the transactions contemplated hereby against the Debtor;

[h] to determine any and all applications pending on Confirmation for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;

[i] to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

[j] to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

[k] to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

[l] to hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;

[m] to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

[n] to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

[o] to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, Bankruptcy Code;

[p] to hear and determine claims of exemptions; and

[q] to enforce orders of the Bankruptcy Court determining the status of Exempt Property.

### 11.2    *Failure of the Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Case, including the matters set forth in Section 11.1 of the Plan, this Article 11 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### ARTICLE 12: MISCELLANEOUS PROVISIONS

### 12.1    *Discharge*

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, confirmation of the Plan shall operate as a discharge in accordance with Section 1141 of the Bankruptcy Code upon the Effective Date.  If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, as soon as practicable after completion by the Reorganized Debtor of all payments due within the first 3 years of the Plan, or such longer period not to exceed 5 years as the Bankruptcy Court may fix, the Reorganized Debtor will be entitled to request that the Bankruptcy Court grant the Reorganized Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the Plan, except any debt—

    (1)    on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the Bankruptcy Court; or

    (2)    of the kind specified in section 523(a) of this title.

Except as otherwise provided in this Plan, any such discharge shall discharge all existing debts and Claims of any kind, nature or description whatsoever against the Debtor or any of its assets or properties to the fullest extent permitted by the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [a] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [b] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [c] the holder of a Claim has accepted the Plan. As provided in section 524 of the Bankruptcy Code, the discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or any of its property, to the extent it relates to a Claim discharged. Notwithstanding anything to the contrary, this Section 12.1 does not enjoin creditors from enforcing their rights under the Plan and does not apply to post-petition ad valorem taxes.

### 12.2 *Injunctions*

From and after the Effective Date, all holders of Claims shall be and are hereby permanently restrained and enjoined from: (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor or its assets; (b) enforcing, attaching, collecting, or recovering on account of any Claim by any manner or means, any judgment, award, decree, or order against the Reorganized Debtor or its assets except pursuant to and in accordance with this Plan; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Reorganized Debtor or its assets; (d) asserting any control over, interest, rights or title in or to any of the Reorganized Debtor's assets except as provided in this Plan; and (e) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that this injunction shall not bar any holder of an Claim from asserting any right granted pursuant to this Plan; provided, further, however, that each holder of a Contested Claim shall be entitled to enforce its rights under the Plan, including seeking Allowance of such Contested Claim pursuant to the Plan.

### 12.3 *De Minimis Distributions*

No distribution of less than $25.00 shall be made to any holder of an Allowed Claim. Such undistributed amount will be retained by the Reorganized Debtor.

### 12.4 *Automatic Stay*.

The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor and its assets. As of the Effective Date, the discharge and injunction in Section 12.2 above shall become effective.

### 12.5  *Post-Effective Date Fees and Expenses of Professional Persons*

Except as provided in this Plan, after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by the Reorganized Debtor of a written invoice, which invoice shall also be served upon counsel for the Debtor, and the United States Trustee, by the Professional Person seeking fees and expense reimbursement and provided, further, however, that the Reorganized Debtor may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so.  In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout the Case.

### 12.6  *Bankruptcy Restrictions*

From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, Section 363 or 364]. The Reorganized Debtor may conduct its affairs in such manner as is consistent with entities not in bankruptcy without the need of seeking Bankruptcy Court approval.  No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

### 12.7  *Binding Effect*

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtor, or any other Entity, [ii] to prejudice in any manner the rights of the Debtor, or any other Entity, or [iii] to constitute any admission by the Debtor, or any other Entity.

### 12.8  *Governing Law*

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Case, except as may otherwise be provided in such agreements, documents and instruments.

### 12.9  *Modification of Plan*

Except as provided in Section 1127(e) of the Bankruptcy Code, modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that [i] the Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, [ii] the Bankruptcy Court, after notice and a hearing, confirms the

Plan as modified, under Section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications. The Plan may be modified after substantial consummation of the Plan in accordance with Section 1127(e) of the Bankruptcy Code.

### 12.10  *Creditor Defaults*

Any act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Reorganized Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may [a] designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70 or [b] make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed.

### 12.11  *Default by the Debtor*

In the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred by the Debtor, such creditor must provide the Debtor with written notice ["**Notice**"] of such default to the following addresses: 2009 McKenzie Dr, St 124, Carrollton, TX 75006, 4251 FM 2181, 230-458, Corinth, TX 76210 and 12770 Coit Road, St 850, Dallas, TX 75251 via overnight mail or similar same-day or express delivery. If the default asserted in the Notice remains uncured on the sixtieth [60th] day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### 12.12  *Severability*

Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or transaction, the Debtor may modify the Plan in accordance with Section 12.9 of the Plan so that such provision shall not be applicable to the holder of any Claim. Such a determination of unenforceability shall not [1] limit or affect the enforceability and operative effect of any other provision of the Plan or [2] require the resolicitation of any acceptance or rejection of the Plan.

### 12.13  *Integration Clause*

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties-in-interest upon the matters herein.

### 12.14  *Exculpations*

Neither the Debtor, nor its agents or attorneys, shall have or incur any liability to any holder of a Claim for any act, event or omission in connection with, or arising out of, the Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

**12.15** *Liquidation Analysis*

There are two possible consequences if the Plan is rejected or the Bankruptcy Court denies confirmation of this Plan: (a) the Bankruptcy Court could dismiss the Case, or (b) the Case could be converted to a liquidation case under Chapter 7 of the Bankruptcy Code. If the Debtor's bankruptcy case were to be dismissed, the Debtor would no longer have the protection of the Bankruptcy Court and the applicable provisions of the Bankruptcy Code. In either case, Motili's lien on the Debtor's assets would not be subject to avoidance as a preference under 11 U.S.C. § 547 and Motili would likely seek to foreclose on all of the Debtor's assets, leaving other creditors with no recovery. In a Chapter 7, a Chapter 7 Trustee would seek to monetize the Motili Recoveries and Receivable Recoveries in the same manner as the Debtor intends to. However, creditors would not receive the projected disposable income of the Debtor for the Term. Accordingly, the Debtor believes that the return proposed under the Plan is superior to that of any liquidation.

**12.16** *Compliance with 11 U.S.C. § 1190*

The Debtor anticipates that it will be able to sustain monthly operations as set forth in <u>Exhibit 1</u>, and attachs such projections to reflect the ability of the Debtors to make payments under this Plan.

DATED: July 14, 2023.

*/s/ Howard Marc Spector*
Howard Marc Spector
TBA #00785023
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
[214] 365-5377
FAX: [214] 237-3380
EMAIL: hspector@spectorcox.com

COUNSEL FOR THE DEBTOR

# BUILDER DIRECT SALES GROUP LLC
## Pro-Forma Profit and Loss

|  | Total |
|---|---:|
| **Income** | |
|   Sales | 80,000.00 |
|   Uncategorized Income | |
| **Total Income** | **$ 80,000.00** |
| **Cost of Goods Sold** | |
|   Cost of Goods Sold | 40,000.00 |
| **Gross Profit** | **$ 40,000.00** |
| **Expenses** | |
|   Auto Expense | 1,400.00 |
|   Bank Fees | 100.00 |
|   Computer Subscriptions & Expenses | 200.00 |
|   Consulting - Accounting | 450.00 |
|   Contract Labor | 1,000.00 |
|   Dues and Subscriptions | 1,500.00 |
|   Insurance | 1,000.00 |
|   Internet | 200.00 |
|   Meals | 100.00 |
|   Merchant Fees | 100.00 |
|   Misc. | 3,000.00 |
|   Office Expense | 500.00 |
|   Parking and Tolls | 200.00 |
|   Payroll Expense | 15,000.00 |
|   Rent - Building | 6,000.00 |
|   Retirement Plan Expense | 600.00 |
|   Utilities - Electricity | 500.00 |
|   Utilities - Gas | 100.00 |
|   Utilities - Trash | 100.00 |
| **Total Expenses** | **$ 32,050.00** |
| **Net Operating Income** | **$ 7,950.00** |
| **Net Income** | **$ 7,950.00** |